# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
---------------------------------------------------------------X
In the Matter of the Application of

ZACHARY KURUVILLA,

**Index No.:**

Petitioner,

for Judgment pursuant to Art. 78,
CPLR, and Common Law Relief

-against-

SARAH LAWRENCE COLLEGE,

Respondent.
---------------------------------------------------------------X

**VERIFIED PETITION (HYPRID PROCEEDING)**

STATE OF NEW YORK )
ss.:
COUNTY OF WESTCHESTER )

Petitioner ZACHARY KURUVILLA ("Petitioner"), by his attorneys Stewart Lee Karlin Law Group, PC, hereby alleges, deposes, and states as and for his Verified Petition and Petition, and at all times herein relevant, as follows:

**AS AND FOR A FIRST CAUSE OF ACTION-ART 78**

1. Petitioner Zachary Kuruvilla (hereinafter at all times mentioned "Petitioner or Mr. Kuruvilla") was and is a resident of the State of New York.

2. Respondent Sarah Lawrence College (hereinafter "SLC") is duly organized and existing by virtue of the laws of the State of New York and upon information and belief is a corporation and conducts a significant amount of business in the State of New York and County of Westchester.

3. At the time of his enrollment, Petitioner was provided by Respondent SLC with Respondent's policies regarding academic criteria for graduation and the EEO policies from the school, as well as

the appeal procedures in the event of an alleged breach of the agreement. This formed the contract between the Petitioner and Respondent. The contract was based on the terms and conditions for graduation that were offered by the Respondent at the time of Petitioner's enrollment. Implicit in the contract is to apply the rules uniformly and not to act arbitrarily and capriciously and discriminatorily when applying the policies to a given situation.

4. Respondent by and through its agents breached the contract in the State of New York, and also violated federal, state and local anti-discrimination laws hereinafter more specifically described.

5. Jurisdiction is proper pursuant to CPLR §§ 301 and 3001 and 7801 et seq.

6. Venue is proper in Westchester County pursuant to CPLR § 504 since, *inter alia*, the Respondent SLC's principal place of business is in Westchester and Respondent SlC's actions, inactions, decision-making, and resulting causes of action arose there.

7. Petitioner had no disciplinary issues prior to the incident which led to his dismissal.

8. Mr. Kuruvilla has a disability under the ADA [Combined and High Functioning Autism (HFASD), along with issues with executive functioning] and is a senior student in your Liberal Arts undergraduate program.

9. In addition, Mr. Kuruvilla was accepted into the Art of Teaching Master's program and was currently taking field classes in connection with the program.

10. During Mr. Kuruvilla's enrollment at Sarah Lawrence, Mr. Kuruvilla has duly fulfilled all the requirements expected, when he was suspended and ultimately dismissed from the Educational Master's program ("The Art of Teaching") due to alleged inappropriate behavior at his field placement.

11. Since Mr. Kuruvilla enrolled at Sarah Lawrence, the College was aware of his disability (Combined and High Functioning Autism (HFASD), along with issues with executive functioning).

12. During the first years of his enrollment Mr. Kuruvilla exceeded expectations and worked

closely together with Ms. Polly Waldman, from the disability office, who worked as his advisor.

13. Ms. Waldman and Mr. Kuruvilla worked together, and Ms. Waldman communicated with Mr, Kuruvilla's Professors as needed to make sure the accommodations were implemented.

14. However, Ms. Waldman retired, since then, Mr. Kuruvilla has not had the reasonable accommodations and support he needed that Sarah Lawrence was supposed to provide for his last year and his field work at the Master's program. Petitioner should have received instructions in writing.

15. Mr. Kuruvilla had actively requested support from the school's disability office, but no support has been provided to him in 2023 and 2024.

16. The school's Disability Services office has a file with Mr. Kuruvilla's last IEP from high school along with two Psychoeducational Evaluations all of which were emailed directly to Polly Waldman in 2020, and which in previous years Mr. Kuruvilla's SLC professors had access to.

17. Furthermore, the student handbook states that for students facing academic suspension arrangements are supposed to meet with Disability Services.

18. This procedure was not followed in Mr. Kuruvilla's case as set forth below.

19. In the case at hand nobody facilitated such help, and when Mr. Kuruvilla sought assistance, nobody reached out to him after he emailed the Disability Services Office on February 10, 2024.

20. The previous school year, Mr. Kuruvilla made several oral attempts to obtain assistance and accommodations and to develop a plan but nobody reached out to him and engaged in the interactive process.

21. The previous year, Mr. Kuruvilla reached out to the Disability Office but no help was given.

22. Mr. Kuruvilla requested reasonable accommodations which had worked very well in the past with him, such as be able to receive written feedback and face to face meetings.

23. It is also important to emphasize that no reasonable accommodations were given to Mr.

Kuruvilla during his field work assignment as a Master student.

24. At the Early Childhood Center's, the teaching supervisor stated that Mr. Kuruvilla behaved impatiently and did not conduct himself as expected, and that there were issues with his affect. This was used by the Respondent to justify Mr. Kuruvilla's suspension.

25. In the February 15, 2024 letter suspending Mr. Kuruvilla, there was a reference to his "affect" and would not be allowed to reapply for reinstatement until Fall 2025. (Exhibit "A")

26. However, during his enrollment at Sarah Lawrence, nobody expressed concern about Mr. Kuruvilla's affect, and moreover, it is a well-known fact that persons on the Autism Spectrum struggle with 'affect'.

27. Mr. Kuruvilla's disability with reasonable accommodations has not impeded his academic progress in his lifetime.

28. Contrary to SLC's established procedures, Mr. Kuruvilla was not referred to the Disability Office for any concerns regarding his studies or academic progress.

29. Furthermore, the SLC Student Handbook states that for students facing academic suspension, arrangements are supposed to be made for them to have support including meeting with Disability Services, Students who are having difficulty meeting their academic commitments are monitored by the Dean of Graduate and Professional Studies in conjunction with the student's program director.

30. According to Respondent's policies, it should have assisted Mr. Kuruvilla in identifying the underlying reasons for their academic challenges and finding appropriate sources of assistance. These resources include the writing coordinators, Health & Wellness, and Disability Services." See SLC Student Handbook, Students in Academic Difficulty.

31. These procedures were not followed in Mr. Kuruvilla's case when the events leading to the suspension arose. No one facilitated any help, and when Mr. Kuruvilla independently sought assistance, nobody reached out to him after he emailed the Disability office on February 10, 2024

and he did not actually get to speak to anyone until February 20, 2024 (after the decision was made to suspend him and essentially kick him out of the program) when Mr. Kuruvilla walked over to the Westlands Building and asked to speak with Dean Beverly Fox, who told him that there was not much that could be done at the moment in terms of getting accommodations for written feedback and regular meetings, nor was Mr. Kuruvilla offered any support with his meeting the following day where he ultimately learned about the academic suspension. Petitioner had also reached out prior to the suspension hearing to obtain accommodations. At the suspension hearing, Petitioner had brought attention of the Dean that he has disabilities and was receiving accommodations. Dean Ferguson was not aware of Petitioner's accommodations but she would try to secure Petitioner's accommodations.

32. Furthermore, the SLC Student Handbook also states " Students who consistently receive poor evaluations and multiple grades lower than a B over the course of more than one semester may be suspended." In Mr. Kuruvilla's case, he neither received poor evaluations nor grades lower than a B for more than one semester.

33. On or about February 21, 2024 Mr. Kuruvilla met with Kim Ferguson Dean of Graduate and Professional Studies and explained the events and mentioned that he had a disability, however this came as a surprise to Dean Ferguson.

34. Mr. Kuruvilla was promised reasonable accommodations going forward but instead he got summoned into a suspension hearing.

35. At all times, the school had notice of his disability.

36. In the packet that Mr. Kuruvilla's was given notifying him of his suspension, one issue that was brought up was the belief that he held concerns that the other teachers did not have, and they mentioned that on one particular day, Mr. Kuruvilla told children to get off a structure in the backyard because he was concerned about their safety because the students' safety was

compromised.

37. It is also important to emphasize that no reasonable accommodations were given to Mr. Kuruvilla during his fieldwork assignment as a Master's student.

38. Furthermore, there were two alleged incidents that have been brought up in the Suspension documents, and in neither of them was any students harmed. He was overheard (accidentally) that a child was hyperactive.

39. Here, the punishment of suspension was excessive.

40. The punishment of expelling Mr. Kuruvilla from the Master's program and preventing him from continuing his studies is draconian, especially where no child was harmed.

41. Moreover, it is noted that Mr. Kuruvilla received a grade of "Pass" in December for Fieldwork at the end of the Fall 2023 semester.

42. Additionally, Mr. Kuruvilla received straight A's his entire Junior year and he was doing well in his Graduate classes. Mr. Kuruvilla's GPA was approximately 3.50.

43. Further, Mr. Kuruvilla has been working as a Camp Counselor at a Westchester day camp for five years without incident.

44. Due to Sarah Lawrence's drastic draconian action, Mr. Kuruvilla's professional reputation has been tarnished as well as his prospective job opportunities. He has suffered emotional harm as well.

45. Thereafter, Petitioner duly appealed the determination, and the suspension was affirmed. (Exhibit "B")

46. Respondent breached the terms and conditions set forth for graduation and acted arbitrarily and capriciously, irrationally, and in bad faith toward Petitioner as stated.

47. Despite the fact that Petitioner met all the academic and financial requirements, Respondent breached the agreement and has otherwise acted arbitrarily and capriciously, irrationally, and in bad

faith, by dismissing Petitioner.

48. An Article 78 proceeding is appropriate in this case, where Petitioner is seeking an order of reinstatement, as well as damages. See Eidlisz v New York Univ., 15 N.Y.3d 730, 731 (2010) ("plaintiff seeks an order compelling defendants to award him a degree"); Tedeschi v. Wagner Coll., 49 N.Y.2d 652, 657 (1980) ("She asked for an order reinstating her and for damages."); Matter of Kickertz v New York Univ. 30 Misc.3d 1220(A), 924 N.Y.S.2d 310 (Table), 2011 WL 420690 (N.Y. Sup. Ct. 2011) (seeking reinstatement through Article 78 and damages through plenary action), reversed in part 2012 WL 4815522, 2012 N.Y. Slip Op. 06834 (1st Dep't October 11, 2012) (granting Article 78 petition and noting that plenary action remains sub judice); Rizv v. New York College of Osteopathic Medicine of New York Institute of Technology, 98 A.D.3d 1049, 1051 (2d Dep't 2012) (Article 78 commenced to "reinstate him as a student" and if he passes his examination, "to award him a degree").

49. In an Article 78 proceeding for judicial review of a determination of an educational institution, the standard to be applied is whether the action taken by the institution is arbitrary or capricious, or without rational basis or whether the institution has acted in good faith Tedeschi v. Wagner College, supra; Pell v. Board of Educ. Union Free Sch. Dist. No. 1, 34 N.Y.2d 222, 356 N.Y.S.2d 833, 313 N.E.2d 321 [1974]. The arbitrary or capricious test has been said to chiefly relate to whether a particular action should have been taken, is justified or is without a foundation in fact or without a sound basis in reason.

50. It is a matter of essential fairness in the somewhat one-sided relationship between the institution and the individual that when a university has adopted a rule or guideline establishing a disciplinary procedure, that such procedure be substantially observed and that in conducting the inquiry, the university must proceed in good faith.

51. "When a university has not substantially complied with its own guidelines or its

determination is not rationally based upon the evidence, the determination will be annulled as arbitrary and capricious." Kickertz v. New York Univ., 99 A.D.3d 502, 507-08, 952 N.Y.S.2d 147, 153 (1st Dep't 2012), appeal dismissed, 20 N.Y.3d 1004, 983 N.E.2d 765 (2013) (quoting Matter of Hyman v. Cornell Univ., 82 A.D.3d 1309, 1310, 918 N.Y.S.2d 226 (3d Dept. 2011)).

52. Further, it well settled law that "when a student is admitted to a university, an implied contract arises between the parties which states that if the student complies with the terms prescribed by the university, he will obtain the degree he seeks". Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654 (2nd Dept. 1987). The rights and obligations of the parties to this contractual relationship flow from "the university's bulletins, circulars and regulations made available to the student, [which] become a part of this contract. Id., see also Sweeney v. Columbia University, 704 N.Y.S.2d 617 (2nd Dept. 2000).

53. While educational organizations may to a large extent order their own affairs, their conduct may not be arbitrary or capricious or violative of applicable constitutions, bylaws, rules or regulations. Christ The King Regional High School v. Catholic High Schools Athletic Ass'n, Diocese of Brooklyn, 624 N.Y.S.2d 755, N.Y. Sup., (1995).

54. The penalty shocks one sense of fairness.

55. Based on the foregoing Respondent breached the implied in fact contract and acted arbitrarily and capriciously and in bad faith by dismissing Petitioner (forced withdrawal)

56. In this case, Respondent's suspension of Petitioner was "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Kickertz v. New York Univ., 99 A.D.3d 502, 511, 952 N.Y.S.2d 147, 155-56 (2012) appeal dismissed, 20 N.Y.3d 1004, 983 N.E.2d 765 (2013)

57. For these reasons, Petitioner requests this Court to reinstate Petitioner and expunge the dismissal records from his student file.

58. This is the first application for relief requested herein.

**AS AND FOR A SECOND CAUSE OF ACTION**

59. Petitioner repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60. Petitioner is a protected individual within the meaning of the Americans with Disabilities Act 42 U.S.C. 12182.

61. Petitioner has a disability within the meaning of the ADA. Respondent is a statutory party within the meaning of the ADA.

62. The Court has concurrent jurisdiction over Respondent pursuant to 29 U.S.C. § 2617 and 42 U.S.C § 12117. Petitioner has also commenced this action pursuant to the ADA.

63. Respondent violated the ADA by not reasonably accommodating Petitioner.

64. As a result of the willful activities of defendant, Petitioner has been deprived of equal employment opportunities based upon her disability, and perceived disability discrimination in violation of the Americans with Disabilities Act 42 U.S.C. 12182.

**AS AND FOR A THIRD CAUSE OF ACTION-NYS EXECUTIVE LAW**

65. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66. As a result of the foregoing, defendant violated Executive Law § 296 by subjecting plaintiff to a discrimination (a failure to reasonably accommodate Petitioner) based on her disability, and perceived disability. As a result of the Respondent violating the Executive Law plaintiff has been damaged.

**PLAINTIFF DEMANDS A JURY TRIAL ON THE SECOND, AND THIRD CAUSES OF ACTION**

WHEREFORE, Petitioner demands damages and equitable relief against the Respondent including but not limited to reinstatement to the Program, a declaration that the actions taken against

the Petitioner were arbitrary and capricious and discriminatory, reimbursement for the tuition paid to Respondent, and related expenses, special damages for a lost career as a result of not obtaining a Degree including the salary he would have earned if Petitioner was conferred a degree, emotional and psychological damages caused to the Petitioner due to the conduct from the faculty, damages caused to the Petitioner due to the loss of continuity in learning because of the inappropriate dismissal from the program, damages to his professional reputation, pain, suffering and emotional distress, in an amount to be determined at trial; together with costs and disbursements; and other damages together with costs of suit including attorney's fees and such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
July 23, 2024

Yours etc.,

STEWART LEE KARLIN
LAW GROUP, PC.

Stewart Lee Karlin, Esq.
Attorneys for Petitioner
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670

**PETITIONER'S VERIFICATION**

I subscribe and affirm this 23rd day of July 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing Petition is true except for matters stated upon information and belief, and I understand that this document may be filed in an action or proceeding in a court of law.

**ZACHARY KURUVILLA**

**ATTORNEY CERTIFICATION**

Pursuant to 22 NYCRR, Section 130-1.1.A the undersigned, an attorney duly admitted to practice law in the Courts of the State of New York, respectfully affirms the truth of the following statement under the penalties of perjury pursuant to the C.P.L.R.: The undersigned attorney hereby certifies that to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers (s) or the contents therein are not frivolous as defined in Subsection C of Section 130-1.1.

Dated: New York, New York
July 23, 2024

STEWART LEE KARLIN, ESQ.

EXHIBIT "A"

SARAH LAWRENCE COLLEGE

February 15, 2024

Zachary Kuruvilla
zkuruvilla@gm.slc.edu

Sent via password-protected email

Dear Zach,

I regret to inform you that you are being placed on academic suspension from the graduate program in the Art of Teaching in Fall 2024 and Spring 2025 as a result of a series of behavioral incidents that occurred while you were actively working at your fieldwork placement at the Early Childhood Center with children in Fall 2023 and Spring 2024. In addition, you must withdraw from your Spring 2024 fieldwork course in the Art of Teaching program, as the program is not able to place you in a setting with children at this time based on the behavioral incidents that occurred. As you know, working in a setting with young children is a required component of the fieldwork course. Should you choose to do so, you *may* continue your enrollment in your other current Spring 2024 courses. Should you complete those courses successfully, you should be able to complete your BA in May 2024.

As detailed in your acceptance letter to the graduate program in the Art of Teaching, you must successfully complete all graduate level coursework during your first year in the graduate program in order to continue on to the fifth (graduate) year of the program. Unfortunately, you will not be able to do this without successfully completing your Spring 2024 fieldwork course.

We are not able to place you in a setting with children at this time as a result of several incidents related by your supervising teacher at the Early Childhood Center, Sarah Mathews, and the Director of the Early Childhood Center, Lorayne Carbon, in Fall 2023 and Spring 2024. I am appending to this letter a full report of the most concerning incidents from Lorayne Carbon, as well as your Fall 2023 Art of Teaching student observation (completed by Lorayne Carbon) and your Fall 2023 Assessment of Teacher Effectiveness (completed by Sarah Mathews). Of most particular concern are two incidents that Lorayne describes in her report, one that occurred in Fall 2023 and a second that occurred on January 31, 2024. Based on a review of these documents, as well as further conversation with Lorayne Carbon (Director of the Early Childhood Center), your program director, Jerusha Beckerman, and I have made a final decision that we cannot place you in a setting with children for the remainder of the Spring 2024 semester.

Given the concerns outlined above, as per the guidelines of the Student Handbook, you will be suspended from the graduate program in the Art of Teaching for two academic semesters, Fall 2024 and Spring 2025. You will be eligible to return to complete your studies in Fall 2025. To be

eligible to return, you must successfully complete your remaining Spring 2024 graduate and undergraduate level coursework, and complete your BA degree by May 2024.

You are eligible to apply for reinstatement in Fall 2025 through an appeal to the Committee on Graduate and Professional Studies. In order to assess whether you are ready for reinstatement, we ask that you submit an independent evaluation from a licensed professional that documents your ability to control your affect, language, and behaviors in all interactions with young children and the steps taken during your suspension to address these behavioral issues.

To initiate an appeal, please send a letter to the dean of graduate and professional studies at gradadministration@sarahlawrence.edu by June 1, 2025. Appeals should be accompanied by a letter from your program director confirming their agreement that you are ready to return to graduate study.

Your letter requesting reinstatement should discuss the following:

1. the issues that led to the suspension from the College and the measures taken to address them;
2. the reasons you feel ready to resume study at this time; and
3. the plans made to support your progress if reinstated

The decision to reinstate a student relies on evidence that the student has identified and addressed the issues that impeded their successful engagement in their graduate level work in the past and has demonstrated a readiness to re-engage with the academic and professional demands of the graduate degree.

If you are successfully reinstated in Fall 2025, you will return on academic probation, and will thus continue to be expected to make satisfactory progress towards your degree, including:

1. quality of work normally expected for graduate students in your program
2. consistent attendance and application
3. on-time completion of all courses (students on probation are typically not granted an incomplete)
4. no violations of the College's academic integrity policy, whether resolved formally or informally

This includes no further concerning incidents in interactions with children.

Please also note that a student who is suspended after having been reinstated may not apply again for reinstatement for two academic years.

Please do not hesitate to reach out to me to discuss any of the terms of this letter, and/or anything else that might be helpful as we aim to ensure you are able to successfully complete your degree at Sarah Lawrence.

Sincerely,

Kim

--

**Kim T. Ferguson**
Dean of Graduate and Professional Studies
Slonim House First Floor
+1-914-395-2372 (office)
kferguson@sarahlawrence.edu
--
Sarah Lawrence College
1 Mead Way
Bronxville, NY 10708

CC: Jerusha Beckerman, Program Director
Parthiban Muniandy, Don

February 5, 2024

Zachary Kuruvilla is a fifth year Art of Teaching student assigned to a field placement on Wednesday and Thursday mornings in Sarah Mathews' four year old class.

I have serious concerns about Zachary's functioning in the classroom, which has left me with absolute certainty that he can no longer continue his field placement at the Early Childhood Center.

In the mid –point of the fall semester, an incident occurred that was troubling, and at the time was duly addressed. During the children's clean up time, Zachary was assisting two children with the put away of blocks. He became frustrated with the progress and was impatient with one of the children, speaking harshly to her and raising his voice. Overhearing and witnessing the incident, another student teacher went quickly to get Sarah. Zachary explained to Sarah what had happened and told her he had gotten angry at the child feeling that she was not being nice to another child. He acknowledged the challenge of cleaning up and that it was not a time of day that he looked forward to. Sarah asked me to come into the classroom- and in doing so said that Zachary was visibly upset with himself. I asked Zachary to come and speak with me, and seeing that he was concerned I assured him I wanted to hear what happened and we would assess the circumstances together. In the conversation we spoke about what discipline meant- learning rather than consequences. Zachary shared that speaking harshly was a familiar feeling for him, and that in other settings in which he worked with older children, there was a lot of harsh talk and doing things one way without a lot of leeway. We spoke about how that differed from his experience at the ECC and how that could be challenging and something to be aware of and worked on. During that conversation we spoke of the importance of stepping away if feelings were overwhelming and it being ok to call a teacher or even another college student to help. Sarah and I agreed that it would be good for Zachary to sit back and observe for a few days.

I was left having to speak to the child's mother about the incident. I told her that unfortunately one of the college students spoke to her child in a manner that we would not expect, but that he was aware of his behavior and would be reflecting upon that behavior. Fortunately, the parent was understanding – however, her child had a difficult separation for a week and a half following the incident, which included uncharacteristic tears and not wanting to stay at school.

There have been other issues of impatience, not directed towards children, but responded to in a way in which is not modeled by anyone else in the classroom, especially by Sarah. Zachary expressed displeasure at getting wet while standing next to children at a water table, and even after a full semester, still directs children or responds to their play in a manner in which no other adult in the room ascribes. Children in the block area a few weeks ago both were holding different sides of a large hollow block and he loudly responded, "Jesus". There were times last semester when it was suggested by Sarah or me that Zachary would sit back and observe and just listen to the language of the classroom and ways of responding to children. Sarah has taken the time to speak of these moments in group meetings as well as directly to Zachary. In fact, after the incident that will be described, he still went out into the playground and yelled at a child across the yard to "get off" of a structure in the playground that wasn't actually a problem and that he would have seen children doing time and time again without a teacher's intervention.

## Art of Teaching Program - Student-Teaching/Field Work Observation Record

| | | |
|---|---|---|
| Faculty Name: [illegible] | School Name: Sarah Lawrence ECC | Host Teacher/Age Group: Sarah Mathews 4-5 |
| Student Name: Zachary [illegible] | Semester: Fall 2023 | Visit Date: 10/5/23 |

| Aspects/possible evidence of learning/growth | PRESENCE IN THE CLASSROOM |
|---|---|
| • Works well with children one-on-one<br>• Leads a small group<br>• Engages children's interest and attention<br>• Facilitates transitions<br>• Introduces a new activity or material<br>• Takes responsibility for group as a whole<br>• Supports individuals while maintaining a sense of the group | Zachary is working to find a comfortable place to position himself. He is also working not to narrate too much of their play. His instinct is to stop + we spoke of value of letting things play out. |
| | **CHILDREN'S GROWTH, LEARNING and WELL BEING** |
| • Gets to know children through observation to promote each child's learning and well being<br>• Shows genuine interest in and respect for all children, sensitive to children from all backgrounds and areas of need<br>• Demonstration of inclusive stance and consideration of cultural relevance<br>• Shows connections with and care for students<br>• Makes room for quieter or less visible children | Zachary is learning to observe & use his understandings to make decisions.<br><br>Zachary is working to use language that is non judgemental — |
| | **CURRICULUM, CONTENT AND PROVISIONING** |

**Assessment of Teacher Effectiveness**
Sarah Lawrence College Art of Teaching Graduate Program

At the end of the field placement semester, we ask that you assess our students with regard to their growing effectiveness in four areas of teaching. Please consider each area of teacher effectiveness and growth, as described in the Student Teaching Handbook, and make time to discuss the areas of teacher effectiveness with your student.

There is a space below each heading for you to enter a short narrative evaluation of your student's work regarding each portion of the Assessment. You are of course free to express additional levels of competence in the narrative section. We find these descriptive narratives to be especially helpful to both student and College faculty.

| **Student's Name** | **Host Teacher's Name** | **School** | **Age Group/Grade** | **Date** |
|---|---|---|---|---|
| Zachary Kuruvilla | Sarah Mathews | ECC | 4's | 12/9/23 |

Teacher Effectiveness in relation to **PRESENCE IN THE CLASSROOM**

| | Beginning to Develop | Developing Well | Not Applicable (NA) |
|---|---|---|---|
| Works well with children one-on-one | | X | |
| Leads a small group | | | X |
| Engages children's interest and attention | | X | |
| Facilitates transitions throughout the day | | X | |
| Introduces a new activity or material | X | | |
| Takes responsibility for the group as a whole | | | X |

**Narrative Evaluation of above:** When Zachary first came to our classroom it was difficult for him to figure out where to be and how to interact with the children. He was used to a very different setting where the role of teacher was much more instructive. With many conversations and time Zachary has begun to gain a sense of his role in the fours room. He has learned to step back and how to interact in a way that is more consistent with a child-centered classroom and has articulated the importance of "finding the balance between being stern versus being easy going" as it relates to "kids respecting you more." Zachary and I have talked about how the choice of words and the tone teachers use affect children in the classroom. I look forward to continueing to think more about this with Zachary next semester.

Teacher Effectiveness in relation to **CURRICULUM, CONTENT, AND PROVISIONING**

| | Beginning to Develop | Developing Well | Not Applicable (NA) |
|---|---|---|---|
| Initiates and plans an activity or part of a curriculum, provisioning and following through | X | | |
| Maintains focus, keeping track of children's participation in discussion and activities | | X | |
| Keeps track of children's learning, as individual and as a class | | X | |
| Makes room for quieter or less visible children | | X | |
| Makes contributions to classroom activities and curriculum on a day-to-day basis | | | X |
| Brings forward observations and questions to gain insight into teaching and into the children's learning | X | | |

**Narrative Evaluation of above:**

Zachary has not had much opportunity to plan activities in the room. Hopefully next semester he will. As stated previously, in after-class discussions it is clear that Zachary is observing, able to report on subtle details that help us to understand the children. There is one child who likes to spend all her time with Zachary on the days he is with us. When he is in the room, she just wants to talk to him and is almost distracted by his presence. Zachary has worked hard to respond to her while allowing her to develop relationships with her peers and get deeply involved with materials. He spends time reading to her which has been a great solution to a difficult situation for him. Zachary says he now notices the quieter, less visible children that he didn't take as much notice of early on in the semester.

# EXHIBIT "B"

THOMAS, DROHAN, WAXMAN, PETIGROW & MAYLE, LLP

ATTORNEYS AND COUNSELLORS AT LAW
2517 ROUTE 52
HOPEWELL JUNCTION, NEW YORK 12533

DANIEL PETIGROW
STUART S. WAXMAN*
NEELANJAN CHOUDHURY
DAVID H. STRONG**
MELISSA N. KNAPP**
STEVEN L. BANKS
ALLISON E. SMITH
PAMELA D. BASS**

CONOR C. HORAN
CASSIDY E. ALLISON

*ADMITTED IN NEW YORK AND NEW JERSEY
**ADMITTED IN NEW YORK AND CONNECTICUT

*OF COUNSEL*
JAMES P. DROHAN
D'ANDREA & GOLDSTEIN
JOAN M. GILBRIDE

Telephone: (845) 592-7000
Fax: (845) 592-7020

www.tdwpm.com

March 25, 2024

**BY EMAIL: cnk@stewartcarlin.com**

Natalia Kapitonova, Esq.
Stewart Lee Karlin Law Group
111 John Street, 22nd Floor
New York, NY 10038

Re: Student ZK/Sarah Lawrence College Graduate Program

Dear Ms. Kapitonova:

As we have advised, this firm is counsel to Sarah Lawrence College, and, in that capacity, has been requested to respond to your letter of March 14, 2024 to Dean Kim Ferguson, with regard to student ZK's status in the graduate program in the Art of Teaching Master's Program at the College.

With regard to the College's position regarding this matter, please be advised as follows:

1) While your letter references ZK's "…dismissal from the Art of Teaching Master's program at Sarah Lawrence College[,]" this description of ZK's present academic status is not accurate. Rather than dismissing ZK from the graduate program, Dean Ferguson's February 15, 2024 letter gave notice of ZK's placement on academic suspension from the graduate program for two semesters (Fall 2024 and Spring 2025), with leave to apply for reinstatement for the Fall program in 2025. The Dean's letter also required ZK to withdraw from his Spring 2024 fieldwork in the graduate program, while permitting him to complete enrollment in his other Spring 2024 courses, so that he might be able (upon successful completion of those courses) to obtain his BA from the College in May 2024.

2) The College respectfully disagrees with your assertion that it either failed to adhere to its own established procedures, or somehow violated Section 504 of the

Rehabilitation Act (Section 504)[1] with regard to its suspension of ZK from the graduate program. More specifically, the language in the Student Handbook indicating that the College assists students facing academic challenges by "…finding appropriate sources of assistance" (such as Disability Services), in no way requires the College to make a "referral" of a student to Disability Services before a suspension can be imposed. Further, with regard to any accommodations available under Section 504, it is the College's position that, in the postsecondary setting, it is incumbent upon a student with a qualifying disability under Section 504 to himself seek and identify reasonable accommodations from the College which he feels might be necessary for him to access the College's program. In this situation, while ZK had identified himself as a student with a disability to the College's Office of Disability Services several years prior to these events, he had requested no accommodations referable to his field work in the graduate program, and, with regard to his asserted disability, had sought no accommodations, except for test modifications, from the College during his years of attendance. There is simply no indication that he raised any issues with the administrators in the graduate program related to his disability until after the conduct leading to his suspension had actually (and repeatedly) occurred.

3) While your letter also asserts that "…[ZK] has not had the reasonable accommodations and support he needed that Sarah Lawrence was supposed to provide for his Fieldwork in the Master's Program[,]" the letter neither identifies what those accommodations might have been nor addresses how the College might have failed to implement them. We also point out that, even though accommodations on the basis of disability were never sought by this student regarding his fieldwork, the administrators did, in fact, provide support and assistance to him once it became apparent that he was struggling in his interactions with children at the Early Childhood Center (ECC), such as by having the Director of the ECC speak with him several times regarding those issues, then observe and supervise him in the clinical setting, and also by assisting him in decisions in interactions with the children, as well as through similar interactions by ZK's supervising teacher.

4) With regard to the assertion that the College was unable to suspend ZK absent "…consistently poor evaluations and multiple grades lower than B over the course of more than one semester[,]" the College respectfully disagrees, inasmuch as there is nothing in that language (even when viewed in isolation) that suggests that these are the exclusive criteria for imposing academic suspension by the College. It was, in fact, the College's determination that ZK was not making appropriate progress toward his graduate degree, inasmuch as he was unable to engage with children in ways expected for his progress toward the teaching degree.

---

[1] Your citations to Title I of the Americans with Disabilities Act are inapposite because the College is not ZK's employer.

5) With regard to your request for expungement of records relating to ZK's fieldwork, along with a voluntary withdrawal, it is the position of the College that: (a) since he was never dismissed from the program, ZK has the right to voluntarily withdraw, if he wishes; and (b) there exists no basis for an expungement of the records. If ZK believes that the content of records regarding his fieldwork are either inaccurate or misleading, he may request a hearing under FERPA. *See* 34 CFR 99.21.

While your letter requests Dean Ferguson to accept it as ZK's appeal, as ZK was previously informed, under the College's academic policies, students placed on academic suspension have the right to seek reinstatement from the Committee on Graduate and Professional Studies (CGPS). The CGPS is scheduled to meet on April 24, 2024.

If ZK wishes the CGPS to consider the question of his reinstatement for the Fall 2024 semester, he should submit a written appeal of the matter to the CGPS no later than April 10, 2024. The appeal should be directed to the Committee on Graduate and Professional Studies, c/o Joan McCann, Director of Administration, at jmccann@sarahlawrence.edu. In cases such as this, when an appeal concerns a decision by the Dean, the Dean will not participate in the deliberations of the committee.

Should you have any further questions, please feel free to give me a call.

Very truly yours,

Steven L. Banks

cc: Kim Ferguson
Dean of Graduate and Professional Studies